UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**ROBERT DAMION BARNES**                                                       **PLAINTIFF**

**v.**                                                    **CIVIL ACTION NO. 4:22-CV-P107-JHM**

**DAVIESS COUNTY GOVERNMENT et al.**                           **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on initial review of Plaintiff Robert Damion Barnes's *pro se* 42 U.S.C. § 1983 complaint (DN 1) pursuant to 28 U.S.C. § 1915A. For the reasons that follow, the action will be dismissed in part and allowed to continue in part.

### I. STATEMENT OF CLAIMS

Plaintiff, a convicted inmate at the Daviess County Detention Center (DCDC), sues the Daviess County Government and DCDC Jailer Art Magilener in his official capacity. He first alleges that, because he is homosexual, he has been denied access to Jumu'ah, the Muslim worship service, since being incarcerated at DCDC.

Plaintiff next states that on August 7, 2022, he was put on quarantine for Covid-19 "but the reason why is because an infected person was taken out one quaritine cell to our cell which was not under quaritine." He alleges that because a person infected with Covid was transferred into his cell, "eventually Covid spread through our cell. Our cell was not under quaritine nor did we have Covid until this person came in. This is a violation of my 8th and 14th Amendment."

Plaintiff claims that on August 8, 2022, he told the deputy he wanted to see the nurse about sores on his skin. According to the complaint, the deputy stated, "'You know you gay guys keep [getting] aids or monkey pox,'" and walked off.

Plaintiff's final claim is that on August 16, 2022, he received federal legal mail about a "private matter", and it was opened in front of him, read, copied, and then the original was shredded. He asserts that his federal legal mail is supposed to be confidential, yet other inmates heard his mail being read aloud.

As relief, Plaintiff asks for damages, including punitive damages.

## II. STANDARD OF REVIEW

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the complaint under 28 U.S.C. § 1915A. Under § 1915A, the Court must review the complaint and dismiss the complaint, or any portion of the complaint, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id*. at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take

all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### III. ANALYSIS

#### *A. Religion claim*

Plaintiff alleges that since arriving at DCDC he has been denied the ability to attend Muslim worship service because he is a homosexual.

The First Amendment, which is applicable to the States through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" U.S. Const., amend. 1. "Prisoners retain the First Amendment right to the free exercise of their religion." *Hayes v. Tennessee*, No. 09-5529, 424 F. App'x 546, 549 (6th Cir. 2011) (citing *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985)). A violation of the First Amendment requires the imposition of a "substantial burden" on a plaintiff's exercise of his religion. *Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015). Similarly, the Religious Land Use and Institutionalized Persons Act (RLUIPA) prohibits the governmental imposition of a "substantial burden on the religious exercise" of an inmate unless the government establishes that the burden furthers a "compelling governmental interest" through the "least restrictive means[.]" 42 U.S.C. § 2000cc-1(a). The term "substantial burden" as used in RLUIPA is given the same interpretation as the concept of substantial burden on religious exercise in a First Amendment inquiry. *Living Water Church of God v. Charter Twp.*

3

*Meridian*, 258 F. App'x 729, 733-34 (6th Cir. 2007). "[T]he 'exercise of religion' often involves not only belief and profession but the performance of . . . physical acts [such as] assembling with others for a worship service[.]" *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (internal quotation marks and citation omitted). The Court finds that Plaintiff has stated a First Amendment and RLUIPA freedom-of-religion claim.

"Official-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 n.55 (1978)). Thus, Plaintiff's official-capacity claims against Jailer Magilener are actually against his employer, Daviess County. When a § 1983 claim is made against a municipality, the Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. at 691. The Court finds that Plaintiff has alleged the existence of a municipal policy or custom of not allowing him to attend Muslin worship service because of his sexual orientation.

However, as explained above, suing Jailer Magilener in his official capacity is the same as, and therefore redundant to, suing the Daviess County Government. *See Smith v. Brevard Cnty.*, 461 F. Supp. 2d 1243, 1251 (M.D. Fla. 2006) (dismissing claims against individuals sued in their official capacity as redundant where their employer was also named as a defendant); *Smith v. Bd. of Cnty. Comm'rs of Cnty. of Lyon*, 216 F. Supp. 2d 1209, 1219-20 (D. Kan. 2002) (dismissing the claim against the sheriff sued only in his official capacity as redundant since the

governmental entity of which he was an officer or agent was also a defendant in the action). Consequently, the Court will dismiss the claims against Defendant Magilener, but allow them to go forward against Daviess County.

### *B. Covid-19 claim*

Plaintiff claims that on August 7, 2022, he was put on quarantine for Covid-19 after he was exposed to Covid. It is not clear whether he caught Covid. He alleges that because a person infected with Covid was moved into his cell, "eventually Covid spread through our cell. Our cell was not under quaritine nor did we have Covid until this person came in." He alleges that this was a violation of his Eighth and Fourteenth Amendment rights.

As explained above, to state a § 1983 claim against a municipality requires both harm caused by a constitutional violation and the existence of a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. at 691. Putting aside whether a prisoner either catching Covid or being exposed to Covid without catching it is a constitutional "harm," Plaintiff alleges no facts suggesting that a municipal policy or custom was behind the exposure to Covid. Accordingly, the Court will dismiss this claim for failure to state a claim.

### *C. Claim related to skin sores*

Plaintiff alleges that the day after he was put in quarantine, he asked the deputy to see the nurse about sores on his skin, to which the deputy replied, "'You know you gay guys keep [getting] aids or monkey pox,'" before walking off.

The Court considers this to be an allegation related to the deputy's verbal harassment and not a claim of denial of medical treatment: Plaintiff does not allege that he was not able to see

the nurse or that he was denied medical treatment, and he does not name any medical personnel as Defendants.

While the unnamed deputy's homophobic remark clearly offended Plaintiff, it does not constitute a constitutional violation. The law is clear that verbal harassment does not rise to the level of a constitutional violation. *See Searcy v. Gardner*, Civil No. 3:07-0361, 2008 WL 400424, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials."); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (per curiam) (holding that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual orientation cannot state an Eighth Amendment claim). Consequently, this claim will be dismissed for failure to state a claim.

### D. Legal mail claim

Plaintiff claims that on August 16, 2022, federal legal mail about a "private matter" was opened in front of him and read. He asserts that other inmates heard his legal mail being read aloud, even though legal mail is supposed to be kept confidential.

Plaintiff does not allege the information heard by other inmates put him in danger, such as where other inmates are given information that a prisoner-plaintiff is a "snitch" or has harmed children. *See, e.g.*, *Sapp v. Edington*, No. 2:15-CV-12378, 2015 WL 4620566, at *2 (E.D. Mich. July 31, 2015) (explaining that in the Sixth Circuit, a prisoner can state a claim for Eighth Amendment deliberate indifference where he alleges that he suffered resultant harm from being labeled a snitch); *Neal v. California Dep't of Corr.*, No. 1:11-CV-0795-AWI-MJS, 2014 WL 1757213, at *1 (E.D. Cal. Apr. 30, 2014) (where guard took prisoner's legal mail, read it, and

6

"announced out loud that Plaintiff was a sex offender," the court considered that information that "might be expected to expose Plaintiff to an increased risk of harm"), *report and recommendation adopted*, No. 1:11-CV-00795-AWI, 2014 WL 2979437 (E.D. Cal. July 1, 2014). Therefore, the Court considers Plaintiff to be claiming that Defendants improperly handled his legal mail.

Because Plaintiff does not allege routine opening or interference with his mail, he fails to state a claim of constitutional proportions. *See, e.g.*, *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("While a prisoner has a right to be present when his legal mail is opened, an isolated incident of mail tampering is usually insufficient to establish a constitutional violation. Rather, the inmate must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'") (citations omitted); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) ("Such a random and isolated incident [of mail interference] is insufficient to establish a constitutional violation."); *Lloyd v. Herrington*, No. 4:11CV–P128–M, 2011 WL 6026661, at *2 (W.D. Ky. Dec. 2, 2011) ("Even if the Court interprets Plaintiff's complaint as alleging two instances of interference with his mail-one of the outgoing motion and one of his incoming piece of legal mail-the Court still finds that the two incidences taken together do not rise to a constitutional violation."); *Rinehart v. Beck*, No. 5:09-CT-3019-D, 2011 WL 52360, at *5 (E.D.N.C. Jan. 5, 2011) ("Isolated incidents of mail mishandling do not rise to the level of a constitutional violation.").

The Court will dismiss this claim for failure to state a claim upon which relief may be granted.

## IV. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's claims related to Covid-19, skin sores, and legal mail, as well as all claims against Defendant Magilener are **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1).

The Court will allow Plaintiff's First Amendment freedom-of-religion and RLUIPA claims against the Daviess County Government to continue.

Because all claims against Defendant Magilener have been dismissed, the Court **DIRECTS** the Clerk of Court to terminate Defendant Magilener as a party to this action.

The Court will enter a separate Service and Scheduling Order to govern the development of the remaining claims.

Date: December 5, 2022

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
    Defendants
    Daviess County Attorney
4419.009